MAY - 8 2020

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PARISH EUGENE GOSTON,

               Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

18-CV-0645-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 21)

Plaintiff Parish Eugene Goston ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 12) is denied and defendant's motion (Dkt. No. 19) is granted.

## BACKGROUND[1]

Plaintiff filed an application for SSI on November 6, 2009, alleging disability since November 1, 2009, due to post-traumatic stress disorder ("PTSD"), anxiety, depression, speech impairment, and left knee injury.  (Tr. 225-28)[2]  That claim was initially denied,

---

[1] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[2] References to "Tr." are to the administrative record in this case.  (Dkt. No. 7)

and plaintiff then appeared and testified at an administrative hearing on June 20, 2011.

Administrative Law Judge ("ALJ") Robert Harvey issued an unfavorable decision on July

29, 2011. (Tr. 31-59, 84, 106-11, 115-17)  The case was remanded to the ALJ by the

Appeals Council on April 11, 2012. (Tr. 101-15, 169)

A remand hearing before ALJ Harvey took place on September 20, 2012, after

which an unfavorable decision issued on October 9, 2012. (Tr. 12-30)  Plaintiff appealed

to this Court (see W.D.N.Y. No. 14-CV-0661), and the matter was remanded to the ALJ

for further proceedings. (Tr. 1209-11)

Plaintiff's third hearing on his claim took place on August 3, 2017, before ALJ

Stephen Cordovani. (Tr. 1129-1183)  He issued an unfavorable decision on March 13,

2018, which was appealed directly to this Court. (Tr. 1088-1115; Dkt. No. 1)

The issue before the Court is whether there was substantial evidence to support

the ALJ's decision that plaintiff was not under a disability, as defined by the Act, between

November 6, 2009 and March 13, 2018.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act,

the Commissioner's factual determinations "shall be conclusive" so long as they are

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

relevant evidence as a reasonable mind might accept as adequate to support [the]

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

and citation omitted).  "The substantial evidence test applies not only to findings on basic

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the

3

claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant

4

does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §404.1520(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §404.1520(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §404.1520(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.*  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §404.1520(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.*  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.*

5

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the application date of November 6, 2009.  (Tr. 1094)  At step two, the ALJ found that plaintiff had severe impairments of: (1) depressive and anxiety disorders; (2) polysubstance abuse disorder; and (3) as of August 12, 2015, spinal disorder.[3]  (*Id.*)  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 1095)  Before proceeding to step four, the ALJ assessed plaintiff's RFC as of August 12, 2015, as follows:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he can frequently climb ramps, stairs; occasionally bend; occasionally kneel, crouch, crawl; no climbing ladders, ropes, or scaffolds; he cannot work in areas with unprotected heights; cannot work around heavy, moving, or dangerous machinery; he can understand, remember and carry out simple instructions and tasks; able to work in a low stress work environment reflected by simple work only, no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in work routine and processes; occasional interaction with supervisors, co-workers and the general public.

(Tr. 1096)

---

[3] Although plaintiff claimed disability due to mental impairments, they are not at issue in deciding the instant motions.

6

Proceeding to step four, the ALJ found that plaintiff had no past relevant work (Tr. 1104) Proceeding to step five, and after considering testimony from a vocational expert, in addition to plaintiff's age, work experience and RFC, the ALJ found that there were other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as cleaner, mail clerk, and office helper. (Tr. 1104-05) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 1105)

IV.    *Plaintiff's Challenges*

Plaintiff argues that remand is required because the ALJ improperly evaluated the opinion evidence. (*See* Dkt. No. 12-1)

### A.    Dr. Horvath

Plaintiff first contends that the ALJ ignored the opinion of plaintiff's chiropractor that plaintiff could lift only five pounds. (Dkt. No. 12-1 at 17)

Following a work-related back injury in August of 2015, plaintiff treated with chiropractor Julius Horvath. (Tr. 1437-1514) Dr. Horvath assessed plaintiff as 87% to 100% temporarily disabled on March 21, 2017 and May 16, 2017. (Tr. 1439; 1441) He indicated that plaintiff was temporarily totally disabled with a five-pound lifting limitation. (Tr. 1688; 1690; 1692; 1694; 1697; 1704; 1708; 1710; 1714; 1717; 1727; 1734; 1736; 1739; 1752)

The ALJ afforded all of Dr. Horvath's opinions "little weight" because they did not provide functional limitations; the period of incapacitation was under twelve months and therefore did not meet the durational requirement set forth by SSA; the reports were rendered in the context of the Worker's Compensation program; and they were

inconsistent with plaintiff's activity level which supported the ability to perform some essential work functions. (Tr. 1102)

As an initial matter, chiropractors are not acceptable medical sources either under the regulations in effect at the time of the ALJ's decision or before. "[B]ecause a chiropractor is not an 'acceptable medical source,' an ALJ is not required to give a chiropractor's opinions controlling weight under the Commissioner's regulations for treating sources." *Brush v. Berryhill*, 294 F. Supp. 3d 241, 259 (S.D.N.Y. 2018) (citing *Diaz v. Shalala*, 59 F.3d 307, 313–14 (2d Cir. 1995)). However, the Second Circuit has "recognized that 'the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him.'" *Monette v. Astrue*, 269 Fed. Appx. 109, 113 (2d Cir. 2008) (summary order) (quoting *Diaz*, 59 F.3d at 313 n.4.)

Contrary to plaintiff's contention, the ALJ clearly considered the assessments by Dr. Horvath, which included references to a five-pound lifting restriction. He was not, however, required to discuss every piece of evidence submitted. *See e.g., Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) ("The ALJ was not required to mention or discuss every single piece of evidence in the record.") Rather, the ALJ rejected the assessments on a multitude of grounds.

First, Dr. Horvath's assessments reflected a temporary impairment, and were issued in connection with the Worker's Compensation program rather than under social security disability standards. (Tr. 1102; *see* Tr. 1687-1748, 1750, 1759, 1762, 1765, 1768, 1770, 1772, 1776, 1780, 1785, 1791, 1793) Determinations for worker's compensation benefits involve rules and evidentiary findings other than those relevant to

8

Social Security disability determinations. *See Thompson v. Comm'r of Social Security*, No. 18-CV-167, 2019 WL 4016167, at * 4 (W.D.N.Y. Aug. 26, 2019) (ALJ properly discounted opinions rendered in connection with workers' compensation claim "because workers compensation claims are governed by different standards than Social Security disability benefits claims; therefore, an opinion rendered for workers' compensation purposes is not binding on the ALJ."); *see also* 20 C.F.R. § 416.904.

Second, Dr. Horvath's opinions of "100% temporary impairment" and "87.5% temporary impairment" were inconsistent with Plaintiff's activity level. (Tr. 1100; 1102) For example, plaintiff reported that he could prepare food, cleaned, do laundry, go shopping, and iron. (Tr. 257-58, 1383) Plaintiff testified that he drove until his license expired, used public transportation, looked after his grandchildren while his daughter worked, shopped at a corner store daily, visited with a friend, and tended to his personal needs. He stated that while he could probably do laundry, he did not enjoy it and family and friends would usually do it for him. (Tr. 1141, 1150, 1158, 1165, 1169-74).

Finally, plaintiff contends that the ALJ's reasoning was flawed with respect to the finding that these opinions failed to provide functional limitations. (Dkt. No. 12-1 at 17) Yet the only functional limitation that was assessed was plaintiff's lifting ability, and that limitation was rejected by the ALJ. In further evaluating the opinion evidence, he credited the assessment of Dr. Steven Hausman, an orthopedic surgeon, who found that plaintiff could lift 40 pounds maximum and 15 to 20 pounds repetitively, and push/pull 20 to 25 pounds. (Tr. 1102-03) It does not appear from the face of the decision that the ALJ "ignored" the five-pound lifting limit, only that he implicitly rejected it as inconsistent with the remaining opinion evidence and treatment and examination findings. (*Id.*) There is

9

therefore no indication that the ALJ ignored or failed to consider Dr. Horvath's assessed limitation of a five-pound lifting restriction. *See Barringer v. Commissioner*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) (an ALJ is not required to "mention or discuss every single piece of evidence in the record," and although the ALJ is "required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered.") (internal quotations and citations omitted) (alteration in original).  In light of the ALJ's thorough discussion of the medical and opinion evidence, as well as plaintiff's self-reports and hearing testimony, the RFC is supported by substantial evidence.  In contrast, the balance of the record evidence is does not support Dr. Horvath's single assessed functional limitation. *See Matta v. Astrue,* 508 Fed. Appx. 53, 56 (2d Cir. 2013) (an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.").

## B.   Dr. Hausman

Plaintiff next avers that and that the ALJ improperly rejected a physician's opinion that plaintiff needed to frequently alternate positions. (Dkt. No. 12-1 at 21)

On May 11, 2017, Steven Hausmann, M.D., examined Plaintiff in connection with his worker's compensation claim. (Tr. 1479-82, 1635-38)  Plaintiff had normal gait, no scoliosis or spasm, negative straight leg raising and slump test, and no peripheral sensory deficits. (Tr. 1481)  His motor strength was normal, and he had lumbar flexion to 50 degrees, extension to 20 degrees, 30 degrees side bending, and 40 degrees rotation in each direction. (*Id.*)  He was diagnosed with lumbosacral strain/sprain.  (*Id.*)  Dr. Hausmann assessed that plaintiff could lift 40 pounds maximum and 15 to 20 pounds

10

repetitively, and push and pull 20 to 25 pounds, and could alternate sitting, standing, and walking to relieve pain every 15 to 30 minutes. (*Id.*)

With respect to Dr. Hausmann's opinion, the ALJ determined:

> I generally concur with the overall assessment, as it is consistent with treatment records and examination findings in which Dr. Hausman[n] reported normal gait, negative straight leg raising, intact sensation, reflexes and motor strength. Dr. Hausman[n] reported lumbosacral limitation of motion but that there were no radicular findings. Partial weight is accorded this assessment as though I generally concur with limitations, I do not concur with the portion of assessment that indicates position change every 15 to 30 minutes.

> Examination findings and the overall record do not support need for frequent position changes. Doctor notes indicate that the claimant was receiving chiropractic maintenance care but no evidence of need for orthopedic treatment or surgical intervention. The claimant exhibited reasonable mobility and no neurological deficits and the results of lumbosacral MRI scan showed only mild disc bulge at one level (L3-4) with no evidence of Stenosis (Exhibit 34F, pg. 66) Claimant['s] activities, including substantial child care responsibilities are also inconsistent with this assessment. The balance of the opinion is given great weight as otherwise being consistent with the exam findings and the overall record.

(Tr. 1103)

Generally, when assessing a plaintiff's RFC, "[a]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion." *Goldthrite v. Astrue*, 535 F. Supp. 2d. 329, 339 (W.D.N.Y. 2008). However, when the medical evidence shows only minor impairments, "an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Wilson v. Colvin*, 13-CV-6286, 2015 WL 1003933, *21 (W.D.N.Y. Mar. 6, 2015); *see also Matta*, 508 Fed. Appx. at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of

11

medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.")

Here, the ALJ discharged his duty to assess the evidence taken as a whole, which requires resolving conflicting or inconsistent information. See 20 C.F.R. §§ 416.929, 416.945, and 416.946; Davis v. Colvin, No. 15-CV-6695, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017).  The ALJ did not err in rejecting the sit/stand limitation because the RFC was supported by record as a whole.

As stated earlier, Dr. Hausmann conducted an orthopedic evaluation for worker's compensation purposes. (Tr. 1479)  He opined that plaintiff could lift 40 pounds maximum and 15 to 20 pounds repetitively, and push and pull 20 to 25 pounds.  (Tr. 1481)  Dr. Hausmann stated that plaintiff could alternate sitting, standing, and walking.  (Id.)

Dr. Hausmann's examination findings were largely normal and reflected normal gait, negative straight leg raising, no radicular findings, normal reflexes, normal strength, and no scoliosis or spasm.  (Id.)  While plaintiff had reduced lumbar spine range of motion, the doctor noted that he plaintiff presented with "subjective complaints," and had "reasonable mobility and no neurologic deficits and equivocal x-ray findings with essentially what I would consider normal reports . . . ."  (Id.)  There was no evidence that further orthopedic treatment was required, and plaintiff was not a surgical candidate.  (Id.)

As the ALJ observed, the absence of any significant examination findings (by Dr. Hausmann and elsewhere in the record) indicates only a relatively minor physical impairment.  The ALJ therefore properly excluded a sit/stand option from the formulated RFC.  See Keller v. Comm'r of Soc. Sec., 394 F. Supp. 3d 345, 352–53 (W.D.N.Y. 2019) ("the medical evidence of record demonstrates that by August 2015, Plaintiffs physical

12

condition was largely normal, with only mild ongoing complications from her spinal surgery. Under these circumstances, it was not reversible error for the ALJ to make a common-sense assessment of Plaintiff's physical RFC"). Simply because the ALJ rejected a portion of Dr. Hausmann's opinion does not require reversal. *See Marrese v. Colvin*, No. 15-CV-6369, 2016 WL 5081481, at *3 (W.D.N.Y. Sept. 16, 2016) ("The ALJ may, in reconciling conflicting evidence, reject portions of a medical opinion and accept other portions of that same opinion.")

In addition to the relatively benign objective findings, the ALJ pointed out that plaintiff's "only modality of pain relief is over-the-counter Aleve and he reportedly wears a back brace. He engages in normal daily activities such as handling his own personal care, cooking, preparing food and traveling about his community. Importantly, he is also involved in daily childcare activities." (Tr. 1100) The ALJ also properly cited to evidence of plaintiff's conservative treatment and daily activities, in addition to the opinion evidence and examination findings, in support of the RFC. *See Davis*, 2017 WL 745866, at *11 (In this case . . . the RFC formulated by the ALJ is supported by Davis's daily activities, conservative treatment, and the [medical evaluations].") Other than plaintiff's own statements concerning his inability to stand and walk for certain periods of time,[4] he has failed to identify any record evidence inconsistent with the limitations assessed by the RFC.

---

[4] Plaintiff reported to Dr. Hausmann that he could sit and stand for about 5 minutes at a time before changing positions, and could walk about a block and a half. (Tr. 1480) At the administrative hearing, he testified that he could stand for about 20 minutes and walk one and a half to two blocks. (Tr. 1098)

13

Here, because the ALJ adequately explained his rationale for concluding that plaintiff could perform light work, this Court concludes that the ALJ's physical RFC determination is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 19) is granted.

The Clerk of Court shall take all steps necessary to close this case.


SO ORDERED.


Dated:        May __, 2020
              Buffalo, New York

                                          MICHAEL J. ROEMER
                                          United States Magistrate Judge